Here is McAfee v. Christine Boczar, and I guess Mr. Kuehling-Stout will hear from you first. Good morning, if the court please. I am Henry Kuehling-Stout, and I represent Animal Control Officer Christine Boczar in the potential rabid dog bite case. I would like to start by emphasizing what we believe to be very important in this case, is the importance of the warrant. I call the court's attention to Mallee v. Briggs, the 1986 case, and specifically to the decisions or the comments made by Justice Powell. Justice Powell at that time, in 1986, was concerned that in that decision, the court seems to, to use his words, denigrate relevance of the magistrate's determination, that it misconstrued the respective roles of the officer and the magistrate, and that he said the court should expressly hold that the magistrate's decision is entitled to substantial evidentiary weight, and that there should not... You're just arguing facts that the jury had, right? All this was before the jury. This was before the, this was before the jury. Right. And we can't, we can't guess what the jury found or did. They found against your client. They found against... On the first, on the first count. That is correct. But the first count was, was the matter of probable cause, of whether or not a regional officer, in looking at the facts that he saw or she saw in this case, would have determined that there was probable cause for the violation of the misdemeanor statute. But didn't the district court find that the warrant itself was based on a misrepresentation, and had the facts been as was presented, the probable cause wouldn't have existed for the issuance of the warrant? That's what the problem, that's what the district court said. What the district court said, and he based that on finding as the motive. The district court said that the motive, that the reason, he found that the motive in this case of the officer, the animal control officer, that her motive was to get Mrs. McAfee out of Powhatan County, and that that is the reason she made the decision. What difference does it make? It makes, the difference is because the jury also determined that there was no malice. You're talking about in the second count? In the second count. But it found everything that needed to be found for the first count. But the first count is not what's at issue here. Under the Frank case, under the Simmons, and under the- Well, the first count is at issue. That's what the ternancy award is based on, and that was the federal law count, wasn't it? That was the federal law count, which did not require malice at all. You're not challenging any instructions or anything, are you? I am not. We are not. And how about the fact finding by the district court on immunity? Are you challenging any of that? On qualified immunity? Yeah. It listed nine facts. Against qualified immunity. What it said against qualified immunity was it didn't even address, it said that the issue- No, it listed nine facts. My question is are you challenging the fact finding? Yes. What fact? The primary fact is that the court was convinced that Mrs. McAfee- No, what factual finding of the district courts are you challenging? That's clearly erroneous. Clearly erroneous is that the district court concluded that Mrs. McAfee had told Officer Bozar that she could find the house and would take and volunteered to take the location of the dog and would volunteer and that she volunteered to take Officer Bozar to the dog. There was evidence to that effect in the record, wasn't it? That was not a fact in the record. The fact in the record was- I thought McAfee testified to that. McAfee testified that her testimony alone was that she thought she maybe knew where the house was and that was it. Now you have to apply, you just can't look at the first account. You have to look at the second account. No, no, no. You're missing what I'm after. You pressed the court on the immunity count and asked the court to make a ruling on it. So the court issued a printed opinion and made findings of fact and it looked to me like every fact in there had evidence to support it. And it seems to me that I'm trying to find out what facts you are disagreeing with in that opinion. I'm agreeing with the fact, the most important fact is, the reason that the court found that she had misrepresented was that the evidence seen in the light most favorable to Ms. McAfee. He looked at it in that light, that's what he had to do. He really wasn't finding facts, he just had to look at it in the light most favorable to her. Absolutely not in this case. During the conversation McAfee stated that she did not know the street address where the dog was located. That is correct. But volunteered that she could probably find the house. And he cites specific portions of the transcript. Now if that testimony was given, how can we find it in clear error? We're not asking, we're not talking about clear error. Okay, in answer to your question. Listen, you've got to listen to my questions and it will help us get along because I'm not even near the question I want to ask you. The question is what facts are in dispute with clear error that you've challenged in the immunity ruling? Now if there are no facts, my ultimate question is going to be, how can you claim immunity on the basis of those facts? I need to know first, are you challenging as clearly erroneous, and I didn't see anywhere in your brief you did, but challenging clearly erroneous the facts found, this is at page 573 of the transcript, I mean of the JA, found by the district court? Yes. Okay, which fact? The court made seven findings of fact. Okay. No problem with fact one. Two. Yes, disagree with three. Did you state it in your brief? Yes, that the issue is, but volunteered she could probably find the house. Now that part of it is true. That part of that fact is true, but it's not the whole facts. It doesn't matter. I'm asking you to tell me the district court made findings, and you're saying the court was in clear error, and now you're doing in court now making an analysis of the fact finding for the first time and telling me what you disagree with, and you start with number three. Okay. And then you say number three is accurate but didn't go far enough. That is correct. All right. Then it's accurate. I mean, there may be other facts, but these are the facts on which the court relied. Four is accurate. He called them the undisputed relevant facts. That's what he called them. These are the undisputed relevant facts that he identified. That's correct. And we're saying they are disputed, but I'll get to the disputed points in a minute. Bozar did not believe McAfee knew the address. That is correct. Did not know the address. Not to my location. We're talking about address. And all this, you're saying, is going to the qualified immunity? This is going to qualified immunity and the facts that Sergeant Bozar stated. And in this case be— But isn't that the only issue you're raising? No, we're raising the issue that qualified immunity under the Ortiz case, the Ortiz case, the Supreme Court case, says— You're saying you shouldn't have gone to the jury. You should have had qualified immunity end of case. That's what you say. That's your position. It's your client's entitlement to qualified immunity, and he shouldn't have been tried. Yes, but once tried, then qualified immunity can be revisited. And under the Ortiz case, then you look at the nature and character of the evidence at trial and— Did you, in fact, revisit it? Did you file a Rule 50A or 50B? No, we did not. Doesn't Ortiz also say that you have to preserve the issue of qualified immunity by making the appropriate motions to do so? It does, and in that case, and the appropriate motion was made. There was a motion made, but let me go to Ortiz. In Ortiz, they're talking about, in this case, you couldn't raise qualified immunity. In Ortiz, what they were saying was, Look, we are appealing the summary judgment motion that we made before trial. Ortiz said you can't do that. This is after trial. Well, the court held that the official's failure to file a Rule 50B left the appellate forum with no warrant to reject the appraisal of the evidence by the judge who saw and heard the witnesses. That is true, but what the court goes on in Ortiz to say is, what she should have done is, you were saying there was something wrong with the evidence. That's a 50A, 50B motion. What the jury determined, the evidence that the jury determined, if you thought that that was insufficient, you should have filed first a 50A, then a 50B motion. But that's not the situation here. We're not talking about, we're not saying that the jury verdict, we're not questioning the jury verdicts. But neither was the court in Ortiz. It was referring to rejecting the appraisal of the evidence by the judge. But what it says is, the main point of Ortiz was to say, Look, you can't, after a jury trial, go back and try to revive a summary judgment motion. And all you've done here, you haven't raised qualified immunity in the, what you've done, qualified immunity was not otherwise raised. And if you look at the Sykes v. Anderson case of the Fourth and Sixth Circuit, it says this circuit reaffirmed that while Rule 50 is not rigidly applied in all circumstances, a pre-verdict motion and post-verdict motion must be similar. What it's saying is, in all of these cases that were cited by, including Ortiz, Did you file a Rule 50A motion for judgment as a matter of law based on qualified immunity before the case went to the jury? No. Did you file any dispositive motion on that basis? Before the trial, there was a pretrial order. In the pretrial order, the decision, one of the issues was qualified immunity to be decided by the judge. After the trial, trial counsel brought it up to the district court, Now, Your Honor, it is time to decide qualified immunity, to which the district court said, Oh, goodness, is that in there? At which point he said, Well, I suppose we better do that. It's there. Ask counsel for Ms. McAfee. Yes, I agree. So the issue in all of these cases about 50A and 50B is you have to have given notice of your qualified immunity before the trial is over. So you're saying that you satisfied Ortiz even though Ortiz said that you have to preserve the issue by filing the required Rule 50 motion? That is correct. And your basis for that is? Is that what Ortiz is talking about, is that the only way you could do anything in this case, the qualified immunity was only raised in conjunction with the summary judgment motion? Well, it often is. What the court said was, you can, the only way you can make appeal here is to say that the jury verdict, the jury did not comply, in other words, it was insufficient evidence for the jury. And that's what Ortiz is talking about. And you got a jury verdict against you on one count, and it looks like you prevailed on the rest of it. That is correct. All right, then, are you ever going to get around to arguing about your attorney's fee claim? Yes, I was answering the questions. Assume for a minute you're not going to win on your qualified immunity. What do you got left in this case? Okay. On page 692 of the joint appendix, the court gives a reason why it is not going to consider the degree of success in this case. And it says, it is unfortunate that after the case was dismissed at the end of the prosecution's case in state court, that Bozar did not offer a public apology and that the DRM did not pay McAfee's out-of-pocket expenses, a course likely would have ended the matter. Instead, Bozar and DRM forced McAfee to bring this case to vindicate her rights in a needlessly litigious approach. The court concludes the degree of success factor cannot be used to reduce the time component. All right. That type of, under both Simpson and the cases that we've cited, what you're doing here, she's, the court is saying, we're not even going to consider success. Because of the, there's no element in the Johnson factors load star, there's no element that permits the court to say, I wasn't happy with the fact that they wouldn't, that they would not settle. And needless litigation. And they use this and instead, so we're not looking success. In this case, she got $2,900, no compensatory, no compensatory damages. And I mean, no emotional damages, no punitive damages. This is an abuse of discretion standard, correct? Abuse of discretion,  unless. Well, no, it's abuse of discretion regardless. It's abuse of discretion. Yes. Abuse of discretion. And how did the district court abuse its discretion? By using a factor that does not fit in any of the factors necessary to find the correct fee. To say that they're not going to conclude that the degree of success factor cannot be used. It didn't say that. It only said one factor was the deterrent effect in calculating the degree of success is the deterrent effect on potential misconduct by a public official. She struck a blow for everyone who's been subjected to arbitrary treatment by a public official. That's a part of the success. The vindication is a part of that. Well, the case law makes it very clear that you, that the subjective part of that. In other words, under the Powell carrier decision earlier, what can be said is that, I'm sorry, I forgot my train of thought here. The factor that they have added in for to try to find success, items of punishment. In other words, they are attempting to punish by adding that even in as a success item. You've got to have two things. And in this case, you've got to have two things. You've got to have that there was a violation of the fourth circuit of the court. No, the court said it was for the deterrent effect going forward. Okay. We disagree that there's a deterrent effect going forward. The deterrent effect is what you do with the officer. It doesn't amount to an abuse of discretion.  but it has to have constituted an abuse of discretion. Why don't you say that an error of law is an abuse of discretion? I'm sorry. Why don't you say an error of law is an abuse of discretion? I think that's what you're saying. Well, that's what I'm saying. And in the rum case, rum Creek case, it says abuse of discretion is not applicable where, where the district court applies incorrect criteria. And we're saying it's incorrect criteria. The rum case on page three, four, three, one fed, third, one 69. And it makes specific the quality of view of the district court decision in awarding fees as an abuse of discretion. The deferential review ordinarily inherited in that standard is modified by a closer review when the appropriate criteria are established for a fee award in question. What we're saying is incorrect criteria. And this was incorrect criteria. And one thing that's not being looked at is the significance of number two. And if the significance of a warrant and the significance of the defeat on count two, because under the case of there's a case also decided by the, by the district court, the same district court. And it's the case of Bennett B E N N E T T the R N L carriers, which is a fed sub case seven 44 fed sub second four 94, 2010. And it pages five 21 through five 24. The judge in the fourth in the district court, same judge, same district court talked about, he defined, and this has also been in the fourth circuit, but it's an unpublished opinion, which quoted verbatim the language of the district court. And it said such things as, nor did McGinnis inform the police that he thought Lowry was a liar. The failure to corroborate the evidence given by known liars and the failure to disclose pertinent information. Bring that up on, on rebuttal. Okay. Yeah. All right. You've been through your red light there for a little while. Mr. Good morning. May it please the court. I'm William herd here for Ali McAfee with me at council table. It's my associate, Steven P grass, uh, judge Lima to respond to the point that we were making with the opposing council. Uh, there was exactly nothing in the brief that challenged any of the facts found by judge pain as clearly erroneous. And it is obviously too late to do so here at oral argument. Well, the judge can't find facts on summary judgment. Mr. Heard, he was reciting what he said were undisputed facts. He has to look at them in the light, most favorable to somebody in summary judgment. I think he was looking at them in the light, most favorable to Mrs. McAfee. Uh, just in course, this was not at summary judgment. This was post post trial. Uh, well, he says they're the undisputed facts. He doesn't say he's finding facts. Uh, that's correct. He does not say he's finding facts. He says these are undisputed facts. He was cited on whether he's looking back beforehand or after the, considering the trial evidence. I don't know. He says these are undisputed facts and he lists five of seven of them. Yes,  He does.  and they, they are, uh, undisputed as judge pain said, and opposing council has said nothing in this brief to challenge the sufficiency of the evidence. This is a procedural question. It goes a little bit to what judge King is just talking about. I don't know if it's correct that immunity is a question for the court. It seems to me it could be given to a jury too, but if it is a matter for decision by the court, such as jurisdiction is, uh, then, uh, at some point the court can find the facts. Uh, and I don't know whether that's a necessary proposition in this case because as judge King points out, the court tried to avoid disputed facts in this matter. But, uh, I would think the normal rule would be summary judgment before trial. You can't find facts because they're reserved for the jury to find. Uh, and if the jury, but if it's a question for the court to decide, then you can find facts just as you do on a preliminary injunction or on jurisdiction and this type of thing. And so the, uh, this is a post trial motion which the, uh, those are asked the court to decide the immunity issue as a matter for the court to decide. Yes, your honor. And, uh, I would think at that point the court could rely on what it observed as well as what the jury, uh, heard. Uh, I'm not sure it's important to decide this procedurally though. I was curious, uh, about the proposition that immunity is for the court to decide. Judge, I sort of assume that we give it to the jury if there's a factual question. Judge, I believe that, that the, the law of the circuit is that it is a question for the court to decide. But normally as the court has made plain previous decisions, if there are factual disputes going to the question of immunity, then the party raising immunity should typically ask for special interrogatories to the jury. And there were none asked for here. They were not asked for it. And none received. Uh, that's, that's correct. And instead, the jury didn't find anything that had to do it. Uh, you know, they waived it. The, the, the jury's finding on, on the facts really goes to its finding on probable cause. And what that, did that mean in this case and what that means in this case is found as was cited by judge pain is that the bows quote bows are actually misrepresented. The facts close quote, when she went to the manuscript and he said, quote, just pain said, quote, bows are knowingly made a materially untrue representation to the manuscript. Unquote. Uh, he talks about her statement in the criminal complaint. He says, quote, the record shows that that simply was not true in quote. So the record, the, the findings, whether one attributes them to judge pain, as opposing council asked him to make, or whether judge pain is simply reading the facts in the light, most favorable to McAfee who prevailed on the federal complaint. These are the facts before this court, which opposing council in his brief did not say, uh, there was insufficient evidence to support, did not say that these factual statements for clear error. And therefore they are part of the important factual predicate, which is court must look and deciding if qualified immunity was actually waived. And it was waived because under the Miller standard, if you lie to the magistrate on a material fact, you don't get qualified immunity. That's what happened here. Could you help me with my waiver argument? Yes. Judge Duncan, uh, opposing council question opposing council made the point that the pre trial order said that qualified immunity was to be decided by the court. Did say that, did not say it would be decided by the court. Sue a spontane or absent and appropriate motion from, uh, from the defendant. Did it give a time period when it would decide it? Not after trial, not in the pre trial order, but he did decide after trial. You said it was decided after it's taken care of. Uh, it was taken care of. I mean, we think they waited the right to, to even raise the issue. And we think that's clear on the record because there was no 58 motion with respect to count one, the worst with respect to count three, but not with respect to count one. That's on the assumption. The jury's going to decide 58 preserves, uh, challenges to the jury, evidence, but this here, the court reserved the right apart from the jury. Well, you know, other circuits have pointed out, let's put it on a brief. Other circuits have said that it is a appropriate to, to raise qualified immunity, 50, 50 a motion. And you want to, there was this about that. If, if our evidence did not show that, that we met the middle of standard, which is to say that if we didn't show that the office of buzz are a fail to tell the truth, or if we did not show that she omitted material facts that we've shown the cause, or if I wouldn't, did not show that she acted in an objectively unreasonable manner. If we failed to make those all three of those showings, then at the close of our evidence, it would be appropriate for them to have asked for a, a rule 50, a dismissal of count one, but they did not. And they did not because clearly our evidence was sufficient to make not just one, but all three of those findings. She lied. She withheld material facts and she acted in an unreasonable or get too far along. I have a question about the size of the attorney's fee. Yes, sir. And it's based on the notion that the court did not conduct an evaluation of the degree of success.  $2,900, $2,900 and change. Uh, and, uh, uh, you, uh, which from your point of view was quite limited. Uh, when you went to the jury, you said, uh, uh, the $2,900, the exact amount out of pocket expenses. And then you said to the jury, that's not what this case is really about. And then you said, it's the loss of Liberty worth worthy of compensation. Somewhere between 50,000 or 500, you decide whatever, nothing on that. And then you said they need to impose some punishment as an example to others. And they got nothing on that. So out of the three things you went to the jury on and they gave you only the first thing. And you said that was the thing this case was not about. Then, uh, on the complaint, uh, there were three counts and, uh, you lost on two of them. So just on a gross assessment, uh, the degree of success might be considered to be 33%, uh, uh, mostly stated of, uh, I just think $322,000 for this little, uh, bureaucratic aberration is, is a pretty serious amount of money. Let me respond to each of your, each of your concerns. First, this was not a, a, a simple case as opposed and counselors try to make out. Uh, we had to not only show there was no probable cause. We had to show that those are had, had squandered a qualified immunity and we had to show, they don't talk about this and not brief at all. They raised a defense of actual guilt, which means we had to prove not only that she lacked a bold cause and lost qualified immunity. We also had to prove that Ali McAfee was actually innocence. We had like two trials in one. So it wasn't a simple case. Number two, the three claims that were at stake in this case were interrelated common core facts. Uh, and under the Hensley decision about Supreme court, you don't deduct because you don't prevail on some unrelated claims. Well, you, you, uh, I, that's too technical. I agree on that. The thing that bothers me the most, I suppose, is that this case was treated as a very, uh, substantial interference with Liberty and, uh, uh, the, the success almost as defined by your closing argument. Uh, you stand, stood before the jury and asked for three things. And the first thing you asked for was really just sort of the back of the hand. You said, that's not what this case is about. And then you went on to really say what this case is about. And on the two things you said, what this case is about, you didn't get anything. Well, judge, let me, let me say this about, about that. Number one, we got all of our hard damages. We did not get any soft damages, which certainly the record shows that what you got was stipulated to the amount, the $20, the amount that was a stipulation to judge, but there was, there was no stipulation that we were entitled to receive it. Only a stipulation of what was paid out of pocket. No stipulation that we were entitled to receive it. There's no, we're no question may really raise substantially by your colleague, that you weren't the prevailing party. You're the prevailing party. So it's not a question whether you won something. The question is the degree of success. And we have often adjusted awards on the degree of success, but I am troubled by the degree of success. Let me, let me address the Hetzel case in particular, but what case Hetzel, Hetzel v. Prince William County, 1996 case that opposing counsel cites in its brief as one of the reasons why they think our award should be reduced. In that case, the court reduced an attorney's fee award because of a combination of two things. One was because of the disparity between the amount of judgment sought in the complaint and what was awarded. What's the first factor? The second factor was because in that case, the plaintiff did not prevail on her quote core claims. Now that's very different than this case. Well, your core claim, you said was money is the only remedy judge. Our core claim. I'm talking about what your closing argument to the jury was. Money is the only remedy the law has to offer, but that's true. What is the right number to compensate Ms. McAfee? Is it $50,000? Is it $500,000? Something else? Question mark. Is there something more, something else, something you decide judge more than $500,000 and you got 2,900. How? How do you get away from that? That's what you are. Judge says, no, there is no decision by this circuit or any court that we have found or opponent has cited to us that allows a comparison between an, a, a council's closing comment to the jury and the amount that you're going to point. The point is on it. Shouldn't a court, when you don't win everything you asked for, shouldn't a court conduct an analysis to determine the degree of success, judge limited success. Just a minute, please. Limited success justifies a more limited award. And the court in this case did not look at any of the question of limited success. As a matter of fact, uh, it looked like it, uh, might've been trying to, uh, impose a little bit of punishment through the award by, uh, the failure to settle and, and the report of the magistrate judge that, uh, there was a refusal to settle. Well, let me, let me disagree if I may, but I just need to get to the proposition is can't, shouldn't a court on a, when you're the prevailing party, but he don't get all you asked for, shouldn't the court conduct an analysis of whether the limited success justifies a reduction? Well, judge, uh, I'll ask that question in two ways. One, no. And two, it did in this case, the court did conduct an analysis. Let me get to that in one moment. I want to make it very clear that the Hetzel case does not apply. That is the case they rely on. Let's try to agree on a legal proposition. Aren't these awards adjusted for limited success all across the country? If there's limited success in the case, the court may adjust the award. Judge, the, the, the rule is yes or no. The rule is in a civil rights case, such as this one, as the Supreme court has decided, um, you ought to take into account the public interest served by the jury's verdict. But you weren't asking for anything for the public interest. You were asking for money for your client. Uh, you didn't ask for an injunctive relief. You weren't trying to stop any future constitutional deprivations of any kind. You asked for money. It was a suit for money and for punitive damages. And you got no punitive damages and you got no compensatory damages above the stipulated amount of $2,900. Well, let me present to the court what the Supreme court said in the Rivera case court said, quote, we reject the proposition that the awards under the section 1988 should necessarily be proportionate to the amount of damages. A civil, I don't have any problem with any of that. I don't have any problem with that. But this is like 120 to one or something. Uh, you know, a lot of lawyers do these cases pro bono. Let me, let me talk about the style. I mean, I practice law a little bit myself. I don't know. You know, but I'm going to talk about the style and grad. I, I, what was your fee arrangement here with this lady? Uh, our fee arrangement, your honor was, uh, we were paid. Uh, she paid us to handle the case. So the compensation goes to her, not, not to us as a law firm. Uh, as we charged her more initially than, than what, uh, uh, what we asked for from the judge. And of course we worked that out, but this is not, this is not money in, in, in our pockets. This goes to our client. Uh, you know, let me talk about this. And who does the fee, uh, award punish here? The fee award doesn't punish anyone. Well, the fee award is to shift the thing over and, and it's the, it'd be a deterrent, but, uh, it would go, the, the fee award will be paid by, by the state. Runs to the state of Virginia, state of Virginia, Commonwealth of Virginia. Yes, not to this, not to the game warden here or whatever it was. She doesn't, what we got is a dog bite case. She doesn't pay anything. I mean, I, I really have a, uh, you know, I'm concerned about the hourly rates here too, not as well as the degree of success. But, uh, I mean, we have appointed criminal lawyers that, that handle constitutional deprivations on a daily basis for, uh, 40 to $75 an hour in this court. Uh, well judge, that's quasi pro bono. Five or 600 is really getting up there. Judge, that's quasi pro bono and that's fine. And, and, and we do cases pro bono sometimes in criminal cases and other cases. But, uh, the, the, the judge Payne found that both affidavits, ours and theirs supported the hourly rate. And let me say, we had an affidavit from a lawyer that said, these are reasonable rates in comparable cases. Uh, have you ever had a dog bite case before? Judge, this was not a dog bite case. Well, it is not a dog bite case. It is a dog bite case. A woman being taken from a dog bite case turned into a 1983 case. It, it fits in 1983 when you, when the, when the guy goes down there and lies to the magistrate. I agree with that, but it fundamentally, it's a dog bite case. Judge, we disagree with that. We certainly disagree. It's not a dog bite case. Okay. Could I, could I intervene for just a moment? Because I, I think I understand and have sympathy for what you're saying for a couple of reasons. First of all, here you have multiple claims for recovery based on a single set of facts, which made it difficult to, uh, and we found, for example, and the Supreme Court has said, makes it difficult to delineate what hours are spent on what claim. Uh, and the district court, I believe, actually made an effort to subtract claims, subtract hours spent on unsuccessful claims. We actually, the, the marginal hours on the two unsuccessful claims we took out never, never asked for. But, and it permissibly considered the broader, social good achieved when plaintiffs act as private attorney generals by enforcing constitutional rights, not to be subjected to constitutional violations by errant public officials. So it's exactly correct. And if I could, could follow up by referring the court. No, you can let me finish. Uh, and the Supreme Court has also talked about the fact that the deterrent effect of such awards is particularly important in areas of police misconduct, where injunctive relief doesn't help. And now you may respond. Thank you, judge. Well, that is exactly, exactly what judge pain found in this case. If you look at Jordan appendix, pay six 90 and six 91. All right. He said the benefits cannot be measured in dollars alone. It will help assure that other citizens will not be treated as Ms. McAfee was treated as a consequence of Bozo's conduct. He said it vindicates the rights of the citizens of Virginia. Not only that, it cleared McAfee's name and reputation. Well, the award of fees may, but you don't jack up fees in order to punish judge. Our fees were cut by $90,000. I know, but the judge did that for block billing and, and duplicate billing. He did not do it for a degree of success. He, he judge, he, he, uh, that's correct. Nor should he have, but I understand, but that's my proposition. I mean, we have a Supreme court case or our case where $1 success is not successful. You're just exactly correct. And this is not a $1 is a nominal damage award. Please let me finish. If you would, the $1 is not successful. So the question is, the degree of success is a legitimate inquiry. Now, the question in this case is whether there was a limited degree of success. If there was not a limited degree of success, if you, uh, really won the case, prevailed on, uh, fully on the case, uh, it seems to me you're entitled to a reasonable attorney's fee. But if you have limited success and you define your success and you don't achieve it, the question is, should a court at least address that? And, and in this case, the court did not address it, even though it was asked to. Uh, and it's not because of the counts. It's really because the fact you asked for not only the reimbursement for the fees, attorney's fees, you actually set that aside as a stipulated amount. You said, that's not what this case is about. And I think that really clearly and accurately defined what the case was about. What you were looking for is an impingement on liberty and on punishment. Those were the two things. And you got zero for both. And that's, well, that's what you did. Your, your closing argument's pretty clear. You had three points and you got zero for, uh, uh, the damages and you got zero for the compensatory damages, the, the liberty, deprivation of liberty. That's what you had. You said that's the major part of the case. And then the punishment was a major part. And you got nothing. Now, the question is, shouldn't the court have at least looked at that and said, are we entitled to $325,000 for trying that case? Uh, judge, let me answer with three points quickly. If I may, number one, the dollar cases, those are quote nominal damage cases and entirely different category. And I've acknowledged that you didn't get my point. My point was, we have a spectrum that even though you win a dollar, you get nothing. You don't prevail. If you get the full boat, you clearly get something. But there are cases where it measures limited success. And the question is, how do you go about doing that? Judge, the, the, the court in this case concluded page six, 92 concluded that the degree of success factor cannot be used to reduce the time component of McAfee's request. It considered it. Now, why did we set decision? Because of what was at stake, the nature of the right issue. And that goes directly to judge Duncan's comments about the constitutional right, the stake here and vindicating that value. And the needlessly litigious approach taken by bullies are in risk management. And that ties in with, with what the Supreme court said in Riviera, the government cannot last statement. What was that last state? Oh, the needlessly litigious approach taken by bows are, and the, I am now. Well, that's the, that's the point that they wouldn't settle. I don't think that refers to that. I think that refers to the, to the, to the general, a very tenacious defense. They, they put up, you know, they challenged what was Ms. McAfee guilty after all, they raised a qualified immunity on summary judgment when the facts clearly in our favor, but that's what lawyers do. They do. They do fight hard. I mean, that's what, you know, they fight tenacious. They're supposed to do that. And what's the premium? You do that too. I mean, we admire lawyers to do that. What Supreme court said is this, the government cannot litigate tenaciously as they did and then be heard to complain about the time necessarily spent by the plaintiff in response. The district court didn't penalize the city for litigating. It said it was needlessly litigious and it was the needless litigiousness that led to the, to the expense to all of these expenses and that the city should not be allowed to stick to have driven the costs. That's, that's correct. And what you have to say is you've got a state agent abusing her authority and a state agency comes along to protect that defendant and future defendants are trying to scare away lawsuits that try to vindicate constitutional rights. And they do that by this stonewall, needlessly litigious approach, driving up attorney's fees. And the Supreme, I'm sorry, the district court specifically did address the issue of the fact that McAfee only prevailed on one out of three closely related counts in the quantum of damages were small. And it said the hours expended were reasonable and necessary to vindicate for McAfee and other citizens of Virginia, a most important right secured by the fourth amendment of the United States constitution. So you can, you can disagree with what the district court found, but you can't say it didn't consider it. Uh, what you would have to find is that it abused its discretion in reaching the result. It did. That's correct. Your Honor. And that's a high bar and we don't believe that opposing counsel has, has crossed it. Thank you, Mr. Hurd, Mr. Uh, killing stop. Okay. If we look at the Riverside, the river era case at page five 86, uh, justice, uh, Powell states that as a district court put it, there were allegations that the police misconduct. Uh, let me go to the footnote three in this case of justice Powell and Riverside. It probably will be the rare case in which an award of private damages can be said to benefit the public interest to an extent that would justify the proportionately or disproportionately between damages and fees reflected in this case. But that, I mean, that caveat is certainly there, but here you do have the district court taking into consideration those factors. Yes, but the problem is, and I, I know that you've already said that there were goners on qualified immunity, but we must realize that this case was not qualified. Immunity, according to the case law that I'm familiar with says it, it is definitely an issue for the court. It's not an issue for the jury. That's why the jury was never given the issue of whether there was lying towards the, whether lies were made to get the magic to get the warrant and the case and the measure Smith, which takes up Powell's concern in Malibu Briggs. What measure Smith does was to say, uh, it is a high standard that you have to go for when you're looking at a warrant and my client got a warrant in this case, she got a warrant and that the issue is for probable, for qualified immunity, misrepresented to the magistrate to get the warrant. That's what the allegations are. Well, but, but the jury found against you on that. No,  All it found was, well, I think they don't raise this point, but I always thought, and I think a pretty solid that we look at when you have a jury verdict, you look at the facts in the light, most favorable to the prevailing party. And here there was evidence and to support this. And we take that evidence in the unfavorable light to you in a favorable light to Mr. Heard. And that's exactly what the, what the district court did and did incorrectly. You can't say you had one issue. You had the, the qualified immunity. You said you're arguing counter to your case because you said it's for the court to decide. It is for the court has to decide it. Then it finds the facts. Now, it may, but it can't just look at one set of facts in this case. Sure. It can decide credibility. It was in the courtroom that happens on a junction cases. The jury makes its decision. Then the judge makes his decision. They're looking at the same evidence. Okay. Let's let's hope. And that happens in sentencing. Often a judge will look at what happened during trial and give credence to certain testimony. But the, the, in, in this case, I must say, uh, it's a hard case for you to argue the facts, but the facts are not the facts that go to the issue here. The issue is, was the warrant, the warrant by itself gives probable cause. The issue was whether count one, uh, your client violated the constitution under count one, as far as being able to show, come up to the level of all the defenses. You can say that I had a warrant. You can say that I was relying on the judge and, uh, he can say that you lied to the judge and all this. That's all in the mix for the jury to decide. Well, let's focus. Let me turn to, to another thing that is, that gives me concern. The, we, we just dismissed count two, which I think is very important. The jury found the, in your favor on count two, which no malice, no bad faith, which means there's jurors are entitled to return. Also inconsistent verdicts. Yes. Uh, they're entitled to return inconsistent issues involved. These two could be inconsistent. I don't think that helps you a bit. The question is you lost on count one. And you, then as a result of that, Mr. Heard's entitled to fees and costs with respect to being the prevailing party. But he, uh, and, and he botched up this qualified immunity thing. The question is how much fees you're going to be stuck with, I think, and cause, but I don't think the issue of the, the actual qualified issue issue, qualified immunity issue as to the magistrate, as to the warrant itself was, was, was addressed by the jury. It wasn't given to the jury. It was addressed by the court, the district court. And he said that the basis of that, there was no qualified immunity. Was that the motive. In other words, even though the jury had determined there was no motive, except the proper motives of a good faith attempt to, to do justice and have justice done. He said, the motive in this case was that she wanted that. The Ms. Bozar, Sergeant Bozar wanted Ms. McAfee out of the County. And that was it. He can't make that opinion. You could judge, cannot make that conclusion when the jury has said there was no malice. And a reason for that is under the case, which I mentioned earlier, he uses the district court, uses the same information to define malice. In other words, that there was lies said and that the jury could have picked up on that. Malice and lies are two different things. It can lie without malice. Not according to the district judge in the Bennett case. I thought the instructions allowed for it. Anyway, we have explored it. We've let you go through the red light a couple of times here. And we'll adjourn for the day and come down and greet counsel.
judges: Paul V. Niemeyer, Robert B. King, Allyson K. Duncan